IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHELLE T.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | No. 20 C 2757 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff applied for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§416(i), 423, over eight years ago in August of 2014. (Administrative Record (R.) 360-373). She claimed that she had been disabled since July 14, 2013 (R. 367) due to chronic migraines and iris mydriasis. (R. 403). Over the next seven years – which included a brief trip to federal court and back when the case was voluntarily remanded – plaintiff's application was denied at every level of administrative review: initial, reconsideration, administrative law judge (ALJ), and appeals council. It is the most recent ALJ's decision that is before the court for review. See 20 C.F.R. §§404.955; 404.981. Plaintiff filed suit under 42 U.S.C. § 405(g) back on April 24, 2020, and the parties consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c) on May 14, 2020. [Dkt. #7]. The case was fully briefed as of June 28, 2021. [Dkt. ##21, 27, 30]. Nothing happened for a year and a half, at which point the Executive Committee reassigned the case to me

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an Opinion. Therefore, the plaintiff shall be listed using only their first name and the first initial of their last name.

because the parties previously agreed to a remand before me in 18 C 5290. [Dkt. # 31; 18 C 5290 Dkt. ##21, 22]. Plaintiff asks the court to reverse and remand the Commissioner's decision, while the Commissioner seeks an order affirming the decision.

### I.

### A.

Plaintiff was born on February 13, 1977 (R. 360), making her 42 years old when her disability insurance expired (R. 381), and nearly 43 years old at the time of the ALJ's decision. (R. 973-1008). She worked steadily from 2008 to 2014, and before that from 1998 to 2001. (R. 381-82). She's had a variety of jobs, working in accounting at a few different businesses and as a veterinary technician. (R. 391, 404). She suffered an injury to her head and right eye in 2013, causing migraines and damage to her iris.

At over 2,700 pages, the administrative record in this case is enormous, and, as almost always seems to be the case with Social Security Disability appeals, it is a mess. It meanders from 2013 through 2015, back to 2013, on through 2017, then back again to 2013, and so on. This case has spent about seven years in administrative proceedings, and has been in federal court this most recent time for another two and a half years. As such, and especially given that plaintiff has purportedly been out of work for nearly ten years, we shall dispense with a tedious summary of the entire record and focus on the evidence that is pertinent to the arguments the plaintiff and the Commissioner raise in their briefs.

### B.

After an administrative hearing at which plaintiff, represented by counsel, testified, along with a vocational expert, the ALJ determined the plaintiff had the following severe impairments:

2

migraine headaches and iris mydriasis of the right eye secondary to traumatic injury. (R. 979). The ALJ said the plaintiff also had a number of other ailments – including major depressive disorder, colon polyp, colitis, pineal cyst and bilateral bunionectomiesa – that did not amount to severe impairments. (R. 979-81). The ALJ then found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ specifically considered plaintiff's impairments under Listings 2.04 (loss of visual efficiency) and 11.02 (epilepsy). (R. 983-84). As for plaintiff's limitations due to her non-severe mental impairments, the ALJ found the plaintiff had only mild limitations in understanding, remembering or applying information; concentrating, persisting or maintaining pace; interacting with others; and adapting or managing oneself. (R. 981-83).

The ALJ then determined that the plaintiff had the residual functional capacity ("RFC") to perform work at all levels, except:

> the [plaintiff] can never climb ladders, ropes or scaffolds. The [plaintiff] can never work at unprotected heights. The ]plaintiff] can only occasionally work with moving mechanical parts. The [plaintiff] can never operate a motor vehicle as part of her regular job duties. Due to pain associated with her physical conditions, the [plaintiff] is limited to simple, routine and repetitive tasks requiring only simple work-related decisions and is able to occasionally interact with supervisors and coworkers but never with the general public. Due to the [plaintiff]'s photosensitivity, the [plaintiff] must be allowed to wear sunglasses in the workplace and read no more than occasionally.

(R. 984). The ALJ then reviewed plaintiff's complaints about her symptoms, which included daily headaches lasting all day and all night, pain in her eyes, difficulty seeing in fluorescent light and reading computers. She claimed to spend 90-95% of every day lying down. (R. 985-87). The ALJ found that the plaintiff's "medically determinable impairments could reasonably be expected to

3

cause the alleged symptoms; however, the [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. 987). The ALJ then reviewed the medical evidence.

As for medical opinions, the ALJ assigned "little weight" to the opinions from the state agency reviewing physicians that the plaintiff had no severe impairment. She assigned "some weight" to their opinions that plaintiff should avoid exposure to heights, hazards, and bright lights. (R. 992). The ALJ assigned "little weight" to the opinion from plaintiff's treating ophthalmologist that plaintiff was "unable to work under fluorescent lighting." The ALJ called the 2014 opinion outdated, and noted there was nothing in the doctor's "treatment notes or in the record as a whole to objectively substantiate that the claimant is unable to work under fluorescent lighting other than the [plaintiff's] subjective reports of such." The ALJ added that the plaintiff was only noted to be wearing sunglasses on several occasions, and was able to tolerate some exposure to fluorescent lighting because she grocery shopped, drove, and went to medical appointments. (R. 993).

The ALJ also assigned little weight to the opinion from another of plaintiff's treating ophthalmologists that "the only disability I could imagine would be that she is light sensitive." Again, the ALJ was critical of the date of the statement – 2014 – and said there was no indication that light reducing activity modifications such as sunglasses fail to mitigate the effects of fluorescent lighting such that it would be unreasonable to conclude that she must avoid it totally. (R. 993). The ALJ then assigned "great weight" to the 2014 opinion of the consulting examining physician that plaintiff was "able to sit, stand, walk, carry, handle objects, hear and speak without limitations . . . to the extent it is consistent with the residual functional capacity herein indicating that there are

4

no exertional limitations." The ALJ added that the opinion was also consistent with the medical record and the unremarkable findings the consulting examiner reported. (R. 994). The ALJ then rejected another 2014 opinion – from plaintiff's primary care physician – that plaintiff was "unable to work in fluorescent and low lighting due to chronic migraines" because "[t]his kind of light aggravates her condition." The ALJ said the opinion was outdated, noting that the doctor was not a specialist in the field of ophthalmology. The ALJ explained, again that there was "nothing in his treatment notes or in the record as a whole to objectively substantiate that the [plaintiff] is unable to work under fluorescent lighting other than the [plaintiff]'s subjective reports of such. Again, the ALJ said there were only a few medical appointments where a doctor noted plaintiff to be wearing sunglasses and plaintiff was able to drive, grocery shop, and attend medical appointments which was inconsistent with being completely unable to work in fluorescent lighting. (R. 994). The ALJ dismissed yet another opinion from another of plaintiff's treating ophthalmologists that plaintiff has "significant light sensitivity and difficulty with fluorescent lighting which causes her headaches and asks that the plaintiff be "accommodated as much as possible," for essentially the same reasons. (R. 995). The ALJ then rejected a final opinion from one more of plaintiff's treating physicians that plaintiff "has severe debilitating pain, headaches at a frequency of 3-4 per week lasting 48 to 72 hours triggered by bright lights, noise, vigorous exercise, weather changes, driving, computers, watching TV, reading and fluorescent lights and would need unscheduled breaks twice a day for up to 60 minutes, would miss more than 4 days of work per month and is incapable of low stress work." The ALJ noted that the doctor was not an ophthalmologist and found the 2017 opinion outdated. The ALJ added that it appeared to exclusively rely on the plaintiff's subjective complaints, explaining that there was nothing in the treatment notes to objectively substantiate that the claimant

is unable to work under fluorescent lighting other than the claimant's subjective reports. The ALJ added – again – that plaintiff was only noted by doctors to be wearing sunglasses on a few occasions and was able to drive and grocery shop. (R. 995).

Based on testimony from the vocational expert, the ALJ then found that plaintiff was unable to perform her past relevant work as a billing clerk or a veterinary technician because it was semi-skilled, and plaintiff was limited to work that is simple, routine and repetitive. (R. 996-97). The ALJ then relied on the testimony of the vocational expert that plaintiff could perform other work that existed in significant numbers in the national economy: sorter, DOT #222.687-022, approximately 105,000 jobs nationally; assembler, DOT #706.684-022, approximately 315,000 jobs nationally; and packer, DOT# 559.687-074, approximately 430,000 jobs nationally. (R. 997). Accordingly, the ALJ found plaintiff not disabled and not entitled to benefits under the Act. (R. 998).

## II.

The court's review of the ALJ's decision is "extremely limited." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022). If the ALJ's decision is supported by "substantial evidence," the court on judicial review must uphold that decision even if the court might have decided the case differently in the first instance. See 42 U.S.C. § 405(g). The "substantial evidence standard is not a high hurdle to negotiate. *Biestek v. Berryhill*, – U.S. –, –, 139 S. Ct. 1148, 1154 (2019); *Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022). "Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). To determine whether "substantial evidence exists, the court reviews the record as a whole, but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving debatable evidentiary conflicts, or determining credibility. *Reynolds v. Kijakazi*,

25 F.4th 470, 473 (7th Cir. 2022); *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). Where reasonable minds could differ on the weight of evidence, the court defers to the ALJ. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021); *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020).

But, in the Seventh Circuit, the ALJ also has an obligation to build what is called an "accurate and logical bridge" between the evidence and the result to allow the court to trace the path of the ALJ's reasoning from evidence to conclusion. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). The Seventh Circuit has explained that, even if the court agrees with the ultimate result, the case must be remanded if the ALJ fails in his or her obligation to build that "logical bridge." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)(". . . we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and "logical bridge" between the evidence and the result."); *see also Jarnutowski*, 48 F.4th at 774 (". . . the Commissioner argues, we should affirm the ALJ's decision because it was supported by the evidence. Possibly. But we cannot reach that conclusion from the ALJ's analysis."); *but see, e.g., Riley v. City of Kokomo*, 909 F.3d 182, 188 (7th Cir. 2018)("But we need not address either of those issues here because, even if [plaintiff] were correct on both counts, we may affirm on any basis appearing in the record,...."); *Steimel v. Wernert*, 823 F.3d 902, 917 (7th Cir. 2016)("We have serious reservations about this decision, which strikes us as too sweeping. Nonetheless, we may affirm on any basis that fairly appears in the record."); *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012)("[District court] did not properly allocate the burden of proof on the causation element between the parties,...No matter, because we may affirm on any basis that appears in the record.").

Of course, this is a subjective standard, and a lack of predictability comes with it for ALJs hoping to write opinions that stand up to judicial review. One reviewer might see an expanse of deep water that can only be traversed by an engineering marvel like the Mackinac Bridge. Another might see a trickle of a creek they can hop across with barely a splash.[2] But, the Seventh Circuit has also called this requirement "lax." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008). All ALJs really need to do is "minimally articulate" their reasoning. *Grotts v. Kijakazi*, 27 F.4th 1273, 1276 (7th Cir. 2022); *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016). "If a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough." *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985).[3]

---

[2] A perfect example is the aforementioned *Jarnutowski.* There, two judges on the panel felt the ALJ had not adequately explained aspects of her reasoning, 748 F.4th at 774-77, while a third judge, dissenting, thought she did. 748 F.4th at 77-79. The Magistrate Judge who reviewed the ALJ's decision at the district court level also felt the ALJ had adequately explained her reasoning. *Donna J. v. Saul*, No. 19 C 2957, 2021 WL 2206160, at *8 (N.D. Ill. June 1, 2021).

[3] Prior to *Sarchet*'s "logical bridge" language, the court generally employed the phrase "minimal articulation" in describing an ALJ's responsibility to address evidence. *Zalewski v. Heckler*, 760 F.2d 160, 166 (7th Cir. 1985)(collecting cases). The court's focus was on whether an ALJ's opinion assured the reviewing court that he or she had considered all significant evidence of disability. In *Zblewski v. Schweiker*, 732 F.2d 75 (7th Cir. 1984), for example, the court "emphasize[d] that [it] d[id] not require a written evaluation of every piece of testimony and evidence submitted" but only "a minimal level of articulation of the ALJ's assessment of the evidence...in cases in which considerable evidence is presented to counter the agency's position." *Zblewski*, 732 F.2d at 79. In *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985), the court rejected a plaintiff's argument that an ALJ failed to adequately discuss his complaints of pain and was more explicit about how far ALJs had to go to explain their conclusions:

> We do not have the fetish about findings that [the plaintff] attributes to us. The court review judgments, not opinions. The statute requires us to review the quality of the evidence, which must be "substantial," not the quality of the ALJ's literary skills. The ALJs work under great burdens. Their supervisors urge them to work quickly. When they slow down to write better opinions, that holds up the queue and prevents deserving people from receiving benefits. When they process cases quickly, they necessarily take less time on opinions. When a court remands a case with an order to write a better opinion, it clogs the queue in two ways—first because the new hearing on remand takes time, second because it sends the signal that ALJs

(continued...)

### III.

As it happens, this case has a "logical bridge" problem, and it concerns the ALJ's treatment of the medical opinions in the record. The medical opinions in the record varied a bit from doctor to doctor, but they were unanimous that, essentially, plaintiff was unable to tolerate working in fluorescent lighting. The plaintiff's main problem with the ALJ's opinion is the manner in which the ALJ rejected every one of these opinions. [Dkt. #21]. Obviously, that's going to draw some attention.

First, there is the opinion from Dr. Laura Schneider, one of plaintiff's treating ophthalmologists. The doctor wrote on February 26, 2014, that plaintiff had a history of traumatic mydriasis of the right eye which caused the pupil to be persistently dilated. Dr. Schneider explained that plaintiff's abnormal pupillary response, along with her history of migraine headaches exacerbated by fluorescent lighting, lead her to request that plaintiff "be relocated to a more appropriately lit workspace . . . [as plaintiff] [i]s unable to work under fluorescent lighting." (R. 565).

Next, another of plaintiff's treating ophthalmologists, Dr. James Noth, reported on October

---

³(...continued)
should write more in each case (and thus hear fewer cases).

> The ALJ's opinion is important not in its own right but because it tells us whether the ALJ has considered all the evidence, as the statute requires him to do....This court insists that the finder of fact explain why he rejects uncontradicted evidence. One inference from a silent opinion is that the ALJ did not reject the evidence but simply forgot it or thought it irrelevant. That is the reason the ALJ must mention and discuss, however briefly, uncontradicted evidence that supports the claim for benefits.

*Stephens*, 766 F.2d at 287 (citations omitted).

Much more recently, the Seventh Circuit explained that "the 'logical bridge' language in our caselaw is descriptive but does not alter the applicable substantial-evidence standard." *Brumbaugh v. Saul*, 850 F. App'x 973, 977 (7th Cir. 2021).

23, 2014, that he had seen plaintiff on three occasions, the last being either August 19, 2013, or 2014. (R. 657-58). He reported that his examinations showed plaintiff's right pupil was dilated more than twice the size of her left pupil, significant macular pathology, and increased pressure of 34 OD compared to 22 OD. (R. 657). After a course of treatment with steroidal drops, the pupil remained dilated and pressure remained elevated, and Dr. Noth discontinued drops. Plaintiff did not return for her next appointment. Dr. Noth said that "the only disability [he] could imagine would be that she is light sensitive" (R. 658).

The third opinion along these same lines comes from plaintiff's primary care physician, Dr. Tahir Rohail. On December 29, 2014, he wrote that the plaintiff is "unable to work in fluorescent and low lighting due to chronic migraines" because "[t]his kind of light aggravates her condition." (R. 729). The doctor's treatment "notes" around that time indicated that plaintiff's right pupil more dilated than left (R. 728 (November 18, 2014)) and that she was suffering ocular headaches (R. 727, 728) to the extent that she was prescribed strong opioid pain medication: dilaudid, oxycodone, percocet (R. 725, 727, 728). She had been prescribed pilocarpine eye drops to address the pupil dilation, but she became immune and dosage was increased but fear was it would cause retinal detachment so this course of treatment was discontinued. (R. 724).

Another plaintiff's treating ophthalmologists at the University of Illinois, Dr. Joshua Hou, wrote on February 26, 2014 that the plaintiff has "significant light sensitivity and difficulty with fluorescent lighting which causes her headaches" and that the plaintiff be "accommodated as much as possible." (R. 762). Treatment "notes" a month earlier indicated that plaintiff had persistent traumatic mydriasis, with increased light intolerance and sensitivity. Right pupil remained dilated twice the size of left pupil. (R. 763). This finding was consistent for months. (R. 764-70). She also

10

had trouble with prolonged computer use. (R. 764).

A fifth such medical opinion comes from another of plaintiff's treating physicians, Dr. Suma Khaki. In a form filled out from the plaintiff's attorney on October 23, 2017 (R. 1577-79), Dr. Khaki opined that the plaintiff has "severe debilitating pain," 3-4 headaches a week lasting 48 to 72 hours, triggered by bright lights, noise, vigorous exercise, weather changes, driving, computers, watching TV, reading and fluorescent lights. (R. 1577). Plaintiff's issues stemmed from an eye injury that caused permanent damage. (R. 1578). Dr. Khaki said that all treatment options – nerve blocks, botox, pain medication, etc. – had been exhausted and plaintiff was no longer on medication. (R. 1578). Plaintiff would need two unscheduled 30-60 minute breaks a day and would miss more than 4 days of work per month. She was incapable of even low stress work. (R. 1579).

A final, and sixth, opinion along these lines came from the state agency physician, who reviewed plaintiff's medical records when she applied for benefits. On December 4, 2014, Dr. Yong-Ja Kim said that plaintiff would "need to avoid exposure to heights and hazards as well as bright lights" (R. 229).

So, there were five opinions from treating physicians, three of whom were specialists in this area, and an opinion from a state agency physicians, all along the same lines. The ALJ rejected every one of them. As extreme as that sounds at first blush, it could be fine. An ALJ doesn't have to accept medical opinions as long as he "offer[s] good reasons" *Stage v. Colvin*, 812 F.3d 1121, 1126 (7th Cir. 2016) and "minimally articulate[s] his reasons." *Elder*, 529 F.3d at 415 (quoting *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008)); *see also Pavlicek v. Saul*, 994 F.3d 777, 781 (7th Cir. 2021); *Pavlicek v. Saul*, 994 F.3d 777, 781 (7th Cir. 2021); *Walker v. Berryhill*, 900 F.3d 479, 485 (7th Cir. 2018). In this case, however, the reasons the ALJ provided don't add up.

11

The ALJ's primary reason for rejecting the unanimous medical opinion was that they were too old. Indeed, the ALJ offered identical reasoning for rejecting each opinion:

> Although Dr. Schneider had the opportunity to examine the claimant directly, she last saw the claimant in 2014 and her opinions outdated and does not address the entire relevant period at issue prior to the claimant's date last insured in 2019. (R. 993).
>
> Although Dr. Noth had the opportunity to examine the claimant directly, he last saw the claimant in 2014 and his opinion does not address the entire relevant period at issue prior to the claimant's date last insured in 2019. (R. 993).
>
> Although Dr. Rohail had the opportunity to examine the claimant directly, his opinion is outdated and does not address the entire relevant period at issue prior to the claimant's date last insured in 2019. (R. 994).
>
> Although Dr. Hou had the opportunity to examine the claimant directly, he last saw the claimant in 2014 and his opinion is therefore outdated and does not address the entire relevant period at issue prior to the claimant's date last insured in 2019. (R. 994).
>
> Although Dr. Khaki had the opportunity to examine the claimant directly, her opinion is outdated and does not address the entire relevant period at issue prior to the claimant's date last insured in 2019. (R. 995).

While consistency has its place, pointless consistency does not and here, the ALJ's reasoning makes no sense. The plaintiff applied for benefits back in July 2014, claiming she became disabled when she suffered her eye trauma in July, 2013. Her application was denied at initial and reconsideration levels, after which plaintiff waited two years for a hearing, until April 6, 2017. The ALJ's decision came September 20, 2017, and the Appeals Council denied review nine months later on June 4, 2018. The plaintiff filed suit in August of 2018 (No. 18-5290), and the Commissioner agreed to a remand in June of 2019. The plaintiff provided multiple medical opinions on her disability contemporaneous to her claimed onset date and her period of eligibility Once the case got to federal court, the Commissioner agreed that the ALJ hadn't properly considered those opinions

12

in September 2017. [Dkt. ##19, 22, No. 18-5290]. The ALJ can't be allowed to reject those opinions on remand simply because she erred the first time and the process dragged on for so long. Even if plaintiff's pupil returned to normal dilation at some point during the administrative process – and there's no evidence that it has – that doesn't mean that she could very well have been disabled due to her condition for at least twelve months.

The ALJ's reasoning becomes more suspect when one looks at what she thought of an opinion from an agency consultative examiner, Dr. Seth Osafo:

> The undersigned assigns this opinion great weight to the extent it is consistent with the residual functional capacity herein indicating that there are no exertional limitations. (R. 994).

That's shocking because Dr. Osafo's opinion – like the opinions the ALJ rejected for being too old – *also comes from 2014*. Why isn't Dr. Osafo's opinion as "outdated" as the ALJ said the others were? Why didn't the ALJ reject it for "not address[ing] the entire relevant period at issue prior to the claimant's date last insured in 2019"? To ask the question is to answer it. The ALJ's rationale, again, makes no sense.

The ALJ, however, continues in a similar inconsistent and contradictory vein. Here is what the ALJ had to say about the opinions from two of plaintiff's treating physicians, Drs. Rohail and Khaki:

> Furthermore, although Dr. Rohail is the claimant's primary care physician, he is not a specialist in the field of ophthalmology . . . . (R. 994).

> Furthermore, although Dr. Khaki is the claimant's primary care physician, she is not a specialist in the field of ophthalmology . . . . (R. 995).

Viewed in isolation, the ALJ's treatment of these two opinions makes sense. Mydriasis is best assessed by an expert in the area; an expert like an ophthalmologist. The Commissioner's own

13

regulations acknowledge that experts bring more to the table with the malady at issue falls within their area of expertise. *See* 20 C.F.R. § 404.1527(c)(5)(" Specialization. We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist."); *Lambert v. Berryhill*, 896 F.3d 768, 775 (7th Cir. 2018). But, while the ALJ would have preferred an opinion from a "specialist" when she was considering the "notes" from Drs. Rohail and Khaki, specialization in ophthalmology meant little or nothing to the ALJ when it came to the opinions from Drs. Schneider, Noth, and Hou:

> Furthermore, although Dr. Schneider is a specialist in the field of ophthalmology there is no indication that she is familiar with the definitions of disability as used by the Agency. (R. 994).
>
> Furthermore, although Dr. Noth is a specialist in the field of ophthalmology there is no indication that he is familiar with the definitions of disability as used by the Agency. (R. 994)
>
> Furthermore, although Dr. Hou is a specialist in the field of ophthalmology there is no indication that he is familiar with the definitions of disability as used by the Agency. (R. 995)

The ALJ changes her reasoning so quickly when discussing the medical opinions, one is liable to get whiplash trying to follow its path.

The manner in which the ALJ dismissed the expertise of *three* ophthalmologists is suspect as well. The ALJ was correct if she was trying to point out that whether a plaintiff qualifies for benefits is a question of law. 20 C.F.R. § 416.920b(c)(3) ("Statements that you are or are not disabled," or statements about whether an individual can or cannot work constitute evidence that "is inherently neither valuable nor persuasive"); *Albert v. Kijakazi*, 34 F.4th 611, 616 (7th Cir. 2022)(" . . . the ultimate determination of disability is reserved for the Commissioner, and summarily asserting that the claimant is disabled does not suffice under the Commissioner's regulations."). But

14

she was incorrect in saying that any of the three ophthalmologists said the plaintiff was disabled. Not one of them did. They all examined and treated the plaintiff and said plaintiff was light sensitive and shouldn't work under fluorescent lighting. That doesn't require any familiarity with the Commissioner's definition of disability. *See, e.g., Moore v. Colvin*, 743 F.3d 1118, 1127 (7th Cir. 2014); *Bjornson v. Astrue*, 671 F.3d 640, 648 (7th Cir. 2012); *Collins v. Astrue*, 324 F. App'x 516, 520 (7th Cir. 2009).

The ALJ had one more critique of all these opinions, and it was exactly the same for each one. In each case, she inserted the following statement, in boilerplate fashion:

> More importantly, there is nothing in [her/his] treatment "notes" or in the record as a whole to objectively substantiate that the claimant is unable to work under fluorescent lighting other than the claimant's subjective reports of such. As discussed above, the claimant is only noted to be wearing sunglasses because of photosensitivity on only several occasions (i.e., Exhibit 15F/6, 32, 36; 49F/3) and otherwise the record fails to document any objective clinical observations that would corroborate the claimant's reports of an inability to be exposed to fluorescent lighting. In fact, as discussed above, the claimant by her own admission at hearing indicates that she is able to at least some extent engage in activities that require exposure to fluorescent lighting, such as driving, grocery shopping and attending medical appointments which is not consistent with the conclusion that the claimant is completely unable to work in fluorescent lighting.

(R. 993, 994, 995). It's not clear what the ALJ was looking for in terms of "notes" that "objectively substantiate" plaintiff's limitations in fluorescent lighting. The treating "notes" in the record consistently document the plaintiff's mydriasis. That translates to the permanent dilation of the pupil of her right eye – as much as twice that of the left eye – which results in photophobia. (R. 657, 728, 763-770, 1626).

If those types of findings don't support light sensitivity, then the ALJ had to explain why. "It is not the case, as the Commissioner seems to suggest, that any reason, if minimally articulated, automatically justifies the ALJ's discounting of a treater's opinion." *Stocks v. Saul*, 844 F. App'x 888,

15

892 (7th Cir. 2021). Generally acknowledging the regulatory factors is insufficient. *See, e.g., Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010). It's far from obvious that mydriasis and permanent pupil dilation are inconsistent with photophobia, so the ALJ had to explain how these findings failed to support the essentially unanimous medical opinions in this case. *Cullinan v. Berryhill*, 878 F.3d 598, 605 (7th Cir. 2017); *Stocks*, 844 F. App'x at 893; *Gudgel v. Barnhard*, 345 F.3d 467, 470 (7th Cir. 2003) (citing cases).

As a final note, the ALJ repeatedly said of the plaintiff that "her own admission at hearing indicates that she is able to at least some extent engage in activities that require exposure to fluorescent lighting, such as driving, grocery shopping and attending medical appointments." (R. 943, 944, 945). Setting aside the obvious fact that driving doesn't usually involve fluorescent lighting, all these activities are of extremely limited duration when compared to working all day, every day, under fluorescent lights. They don't undermine the doctors' opinions that plaintiff wouldn't be able to tolerate fluorescent light eight hours a day, seven days a week. See, e.g., *Jarnutowski v. Kijakazi*, 48 F.4th 769, 776 (7th Cir. 2022)("These [limited] activities do not undermine [plaintiff's] complaints and limitations."); *Reinaas v. Saul*, 953 F.3d 461, 467 (7th Cir. 2020)("We have previously cautioned ALJs that there are critical differences between keeping up with activities of daily living and holding down a full-time job.")

We often see ALJs reject one or two, or sometimes three, medical opinions indicating a plaintiff is disabled, but rarely if ever do we see an ALJ reject a half dozen, essentially unanimous medical opinions. As already said, that's a bold move that, if it doesn't draw scrutiny at the appeals council level, is certainly going to be looked at carefully if a case gets to federal court. The ALJ seemed to try too hard to get a particular result, contradicting herself in terms of her reasoning,

16

especially regarding the age of the opinions and the doctor's specialties. But still, the court can't say for certain the plaintiff is disabled, especially since these doctors didn't say the plaintiff was disabled; just that she had certain restrictions on her vision. So, this case has to be remanded, and it would be advisable for the ALJ to engage a medical expert to deal with the question of mydriasis, photophobia, and work under fluorescent lights.

## CONCLUSION

For the foregoing reasons, the plaintiff's brief requesting a reversal of the ALJ's decision [Dkt. #21] is granted and the defendant's motion for summary judgment [Dkt. #26] is denied, and this case is remanded to the Commissioner.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 2/24/23